UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PEREZ, et al.,

         Plaintiffs,

    -v-                           No.  20-CV-8010-LTS-GWG

ESCOBAR CONSTRUCTION, INC., et. al.,

         Defendants.

-------------------------------------------------------x

<u>Memorandum Order And Opinion</u>

        Plaintiffs Marco Antonio Perez Perez ("Mr. Perez") and Jose Eduardo Sanchez Arias ("Mr. Arias," and together, "Plaintiffs") bring this putative collective and class action on behalf of themselves as well as other employees similarly situated against corporate defendants Escobar Construction, Inc. ("Escobar Construction"),[1] Nations Construction, Inc. ("Nations Construction"), and JRS Services, LLC ("JRS Services," and together, the "Corporate Defendants"), and individual defendants Jhony Aris Escobar ("Mr. Escobar"), Elias Osmin Alvarez Palacios ("Mr. Palacios"), and Jenny Carolina Alvarez ("Ms. Alvarez," and together, the "Individual Defendants").  (See docket entry no. 213 (the "Second Amended Complaint" or "SAC").)  Plaintiffs' claims are based on the Corporate and Individual Defendants' alleged violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. section 201 et seq., and New York Labor Law sections 650 et seq. and 190 et seq. (the "NYLL").

---

[1]     This case remains stayed as to Escobar Construction pursuant to this Court's July 13, 2022, Order.  (See docket entry no. 138.)

The case is before the Court on the Individual and Corporate Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (See docket entry no. 227 (the "Motion to Dismiss").)  Also before the Court is Plaintiffs' Objection to Judge Gorenstein's Memorandum Order regarding Plaintiffs' Motion to Amend Their Complaint.  (See docket entry no. 267 (the "Objection").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367(a).

The Court has carefully considered the submissions of the parties in connection with the instant motions.  For the following reasons, the Objection is overruled and the Motion to Dismiss is granted.

BACKGROUND

Relevant Factual Background

The following summary is drawn from the Second Amended Complaint, the well-pleaded factual allegations of which are taken as true for the purposes of this motion practice.

The Parties

Plaintiffs were employed by the Individual and Corporate Defendants as construction workers on various projects at various times from 2017 to 2019.  (SAC ¶¶ 10-11.) Specifically, Plaintiffs both worked on projects in Binghamton, New York (from March through June 2017 and September through October 2017), Elmira, New York (from July through August 2017), Kansas City, Kansas (from August through September 2017), Columbus, Ohio (October 2017), Ithaca, New York (from November 2017 through August 2018), and Lafayette and Huntington, Indiana (from November 2018 through November 2019).  (Id. ¶ 12.)  Mr. Perez also worked on a project in New Albany, Ohio for two or three weeks in September 2018.  (Id.)

The Corporate Defendants are all domestic business corporations organized under the laws of the State of Indiana and engaged in interstate commerce that have gross sales in excess of $500,000.  (SAC ¶¶ 13-22.)  Nations Construction's only project was at the Lafayette, Indiana worksite, where Nations Construction "acted as the subcontractor" for Escobar Construction.  (Id. ¶ 104.)  Plaintiffs allege in summary fashion that Corporate Defendants: "share staff . . . who would perform construction work at the various worksites"; "pay Plaintiffs for the work performed as an indistinguishable entity" to the extent that "Plaintiffs would receive pay from both" Nations Construction and JRS Services "for work performed at the bequest of Escobar Construction"; "pay Plaintiffs using the checks from Nations Construction, Inc. and JRS Services LLC"; "advertise the Corporate Defendants as an enterprise"; and are "co-owned by the same partners, namely the Escobar/Palacios family."  (Id. ¶ 116.)  Plaintiffs further allege that the Corporate Defendants "commingled funds and distributed profits to family members who did not work either as independent contractor or employee at the company."  (Id. ¶ 119.)

The Individual Defendants "are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant[s]."  (SAC ¶ 23.)  Plaintiffs allege that Mr. Escobar, known as "Boss" to Plaintiffs, was the President of Escobar Construction, and "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment based on experience and rate of labor completion, and (4) maintained employee records through corporate emails and at" Escobar Construction and Nations Construction.  (SAC ¶ 24.)  According to Plaintiffs, Mr. Escobar "was present on a day-to-day basis" at the worksite in Ithaca, New York (id. ¶ 26), "had project supervisors manage the work schedules of each employee" and "report the hours" (id. ¶¶ 28-29), "would bring new workers to construction sites and would fire workers when there was a

shortage of work" (id. ¶ 30), and "was a direct contact with Plaintiffs at the Ithaca, New York

worksite" (id. ¶ 38).  Mr. Escobar also promised to pay Mr. Perez $25 per hour and Mr. Arias

$17 per hour.  (Id. ¶¶ 39-40.)  Mr. Escobar "intentionally failed to keep and/or retain records

pertaining to the hours worked by Plaintiffs."  (Id. ¶ 47).  Plaintiffs further allege that Mr.

Escobar "induced" them "to travel to Lafayette[,] Indiana with the promise of paying all of the

unpaid wages in Ithaca, New York if they worked."  (Id. ¶ 52.)

       Plaintiffs allege that Mr. Palacios is the son of Mr. Escobar and is the "Registered

Agent" of JRS Services who "(1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules or conditions of employment, by having someone from

each group noting the start time of the work day and informing workers when they could leave,

and (3) determined the rate and method of payment based on experience and rate of project

completion, and (4) maintained employee records."  (SAC ¶¶ 55-56; see also id. ¶¶ 63, 66.)

Other allegations relevant to the Motion to Dismiss include that Mr. Palacios hired Mr. Perez for

JRS Services (id. ¶ 62), "calculated the pay for the construction workers on Microsoft Excel and

on paper" (id. ¶ 64),[2] "handled the paychecks for JRS Services" (id. ¶ 65), was Mr. Perez's

"employer . . . in New Albany and Ohio" (id. ¶ 67), "was at the Binghamton work site from

Mondays through Fridays" (id. ¶ 68), "helped make the budgets as an . . . employee" of Escobar

Construction (id. ¶ 76), "was authorized to sign the paychecks" of JRS Services (id. ¶ 91), and

---

[2]     This allegation appears to be inconsistent with Plaintiffs claims that Mr. Palacios "did not keep track of employee time" (SAC ¶ 74) and that he "would jot down the work hours each day and mail such notes to the Escobar Construction . . . office, which in return would mail back employee checks" (id. ¶ 96; see also id. at ¶ 95 (alleging there "wasn't an organized methodology how [he] keep tracked of everything. Sometimes it was on paper, and sometimes it was on email.")).

"would distribute pay checks sent" by Escobar Construction and Nations Construction" (id. ¶ 97).

Plaintiffs allege that Ms. Alvarez was the niece of Mr. Escobar (see SAC ¶ 110), that she was the President of Nations Construction, and that she "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records" (id. ¶ 100; see also ¶¶ 107, 112). Ms. Alvarez hired "Carol Baird, the VP of Escobar Construction, Inc. to serve as her supervisor at the Lafayette, Indiana work site" (id. ¶ 103), "would contact the supervisor of Escobar Construction, Inc. three to five times a month" (id. ¶ 106), "had the authority to sign paychecks of Nations Construction" (id. ¶ 108), "was in charge of receiving the payments, paying the construction workers, and verifying that the job was done properly and [c]orrectly" (id. ¶ 109), "hired each of the construction workers on behalf of Nations Construction" (id. ¶ 111), and "controlled the employment conditions at the work sites" (id. ¶ 113).

Plaintiffs' Claims

Plaintiffs allege that the Corporate and Individual Defendants "knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times . . . their regular rate of pay for all hours worked over forty . . . in a given workweek" and "failed to keep full and accurate records of Plaintiffs' hours and wages." (SAC ¶¶ 132, 134.) According to Plaintiffs, Defendants also failed to provide Plaintiffs with "Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the

employee's gross and net wages for each pay day."  (Id. ¶ 136.)  In addition to alleging that they were not paid overtime despite working well over forty hours per week, Plaintiffs allege that they did not receive pay for all the days that they worked.  (Id. ¶¶ 146, 150, 156, 163, 172.)

Relevant Procedural History

        Plaintiffs commenced this action on December 29, 2019.  (See docket entry no.1 (the "Complaint").)  On August 3, 2020, Plaintiffs filed their First Amended Complaint.  (See docket entry no. 28 (the "First Amended Complaint").)  On October 28, 2020, in a scheduling order pursuant to Federal Rule of Civil Procedure 16, the Court set January 15, 2021, as the deadline for the parties to amend the pleadings or join other parties and April 26, 2021, as the date for the close of discovery.  (Docket entry no. 64 (the "Scheduling Order").)  The Court extended discovery several times, with a final deadline of October 30, 2022.  (Docket entry no. 154.)  That discovery deadline was extended again, to February 3, 2023, for one opt-in Plaintiff, Diego Villasenor ("Mr. Villasenor"), only.  (Docket entry no. 221.)  All opt-in plaintiffs, other than Mr. Villasenor,[3] filed their consent to sue forms months before discovery closed on October 30, 2022.

        On October 11, 2022, Plaintiffs filed their motion for leave to file a Second Amended Complaint.  (Docket entry no. 192.)  On November 29, 2022, the Court—noting that Plaintiffs had never sought an extension of the January 15, 2021, deadline to amend their pleadings—granted Plaintiffs' motion (docket entry no. 211), and Plaintiffs filed their Second Amended Complaint asserting claims for violations of the FLSA and NYLL.

---

[3]    Mr. Villasenor signed his consent to sue form on September 23, 2022, and Plaintiffs first notified the Court that Mr. Villasenor would seek to opt in on October 10, 2022.  (See docket entry no. 221.)

On January 23, 2023, Defendants filed the instant Motion to Dismiss.  On February 6, 2023, the parties filed a joint letter in which Plaintiffs stated that they intended to move to amend the complaint for a third time.  (Docket entry no. 230.)  The Court set a deadline for briefing on the motion for leave to amend (docket entry no. 233), and Plaintiffs filed their motion for leave to file their Third Amended Complaint on March 3, 2023 (docket entry no. 239 (the "Motion for Leave")).  The changes reflected in the proposed Third Amended Complaint are the addition of six plaintiffs—Martin Galvan Guevara, Oscar Garza, Vincente Padilla, Kasheem Hill, Martin Galvan Jr., and Diego Becerra Villasenor—along with allegations relating to those plaintiffs' state law claims and the putative Federal Rule of Civil Procedure 23 class they seek to represent.  (See docket entry no 240-2 (the "Proposed Third Amended Complaint" or "Proposed TAC").)

On April 13, 2023, Magistrate Judge Gorenstein denied Plaintiffs' Motion for Leave (1) because Plaintiffs failed to show "good cause" to modify the scheduling order pursuant to Federal Rule of Civil Procedure 16, and (2) in the alternative, under the more permissive Federal Rule of Civil Procedure 15 standard, because of Plaintiffs' undue delay.  (Docket entry no. 262 (the "Order").)  On April 27, 2023, Plaintiffs filed their Objection to that Order. Plaintiffs object to Judge Gorenstein's conclusions under both Federal Rules of Civil Procedure 15 and 16.

<u>Discussion</u>

<u>Rule 72 Objection to Order Denying Leave to Amend the Second Amended Complaint</u>

    <u>Standard of Review</u>

        In their Objection, Plaintiffs did not specify whether they objected to Judge Gorenstein's Order under Federal Rule of Civil Procedure 72(a)—which governs review of a magistrate judge's resolution of non-dispositive motions—or 72(b)—which governs dispositive motions.  When a party objects to a magistrate judge's non-dispositive order, the district court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  A decision is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>Gualandi v. Adams</u>, 385 F.3d 236, 240 (2d Cir. 2004) (internal quotation marks and citation omitted).  An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  <u>Knitting Fever, Inc. v. Coats Holding Ltd.</u>, No. 05-CV-1065-DRH-MLO, 2005 WL 3050299, at *3 (E.D.N.Y. Nov. 14, 2005) (internal quotation marks and citation omitted).  This standard of review is "highly deferential," as "magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused."  <u>Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic</u>, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  On the other hand, when a party objects to a magistrate judge's dispositive order, the "district judge must determine de novo

any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

   While the Second Circuit has referred, in dicta, to a motion to amend a complaint as a non-dispositive matter, it has not explicitly decided whether such a motion is non-dispositive.  See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007).  Since that decision, many courts in this district have used the "clearly erroneous" standard to assess the denial of leave to amend by a magistrate judge, regardless of the grounds for denial.  See, e.g., Coral Crystal, LLC v. Fed. Ins. Co., No. 17-CV-1007-LTS-BCM, 2021 WL 84308, at *1 n.1 (S.D.N.Y. Jan. 11, 2021) (collecting cases).  Other district courts in this Circuit that have reviewed magistrate judges' denials of leave to amend based on, for instance, futility, have used a de novo standard of review under Rule 72(b), likening the opposition to the amendment to a dispositive motion to dismiss.  See id.  That said, "courts have routinely applied the 'clearly erroneous' standard of review where, as here, the ruling is 'based on procedural grounds,' such as the movant's failure to satisfy the 'good cause' requirement of Rule 16 of the [Federal Rules of Civil Procedure], rather than on a substantive evaluation of the merit of the proposed claim" and does not foreclose future litigation of the proposed claims.  Ahmed v. Astoria Bank, No. 14-CV-4595-JBW, 2015 WL 4394072, at *1 n.1 (E.D.N.Y. July 16, 2015) (collecting cases).

   Judge Gorenstein's Order denied leave to file a Third Amended Complaint (1) because Plaintiffs failed to show "good cause" to modify the scheduling order pursuant to Federal Rule of Civil Procedure 16, and (2) in the alternative, under the more permissive Federal Rule of Civil Procedure 15 standard because of Plaintiffs' undue delay.  (See Order at 7.) Because the ruling was based on a "procedural ground[]" rather than on a "substantive evaluation of the merit of the proposed claim" and "the denial of leave to amend does not foreclose

potential claims" (<u>Ahmed</u>, 2015 WL 4394072, at *1 n.1), the Court reviews Plaintiffs' Objection for clear error.

Discussion

None of the Plaintiffs' objections to Judge Gorenstein's Order demonstrates that the decision was clearly erroneous or contrary to law.  The Court will address each of the Plaintiffs' objections in turn.

Rule 16

While Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend] when justice so requires," "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" <u>Grochowski v. Phoenix Const.</u>, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 16). Indeed, it is not an abuse of discretion to "deny[] leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order." <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229 (2d Cir. 2007).  To show "good cause," a party must show that it acted with "diligence" to meet the deadline in the scheduling order.  <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000); <u>see also</u> <u>One Step Up Ltd. v. Empire Apparel</u>, LLC, No. 21-CV-5392-PAC-RWL, 2022 WL 1446553, at *2 (S.D.N.Y. Apr. 13, 2022) ("[W]hen a party files a motion to amend after the deadline for doing so established in a court's scheduling order . . .  the movant must show that the deadlines could not have been reasonably met despite its diligence." (internal citations and quotation marks omitted)).

In his Order, Judge Gorenstein denied leave to amend under Rule 16 because (1) a scheduling order had been entered, and (2) Plaintiffs failed to establish good cause to amend their complaint after the deadline set in the scheduling order.  Plaintiffs offer a number of objections to Judge Gorenstein's conclusion, but not one demonstrates clear error.

First, Plaintiffs argue that their motion for leave to file a Third Amended Complaint was brought "well in advance of the adjudication of the Rule 23 Class Motion." (Objection at 2-3.)  But Plaintiffs do not explain why this excuses their failure to meet the deadline set by the scheduling order.  Instead, Plaintiffs simply note that "Courts in this Circuit often permit a plaintiff to amend its pleading to include an opt-in plaintiff and his/her supplemental NYLL claims."  (Id. at 3.)  The cases cited for that proposition do not support the argument that a motion for leave to amend is timely so long as it is filed in advance of a motion for class certification under Federal Rule of Civil Procedure 23.[4]

Second, Plaintiffs assert that they could not have included the six additional plaintiffs in their Second Amended Complaint to the extent that "the inclusion of Diego Becerra Villasenor" as an opt-in to the FLSA class was "decided on January 9, 2023, more than two months after the Motion to Amend was initially briefed."  (Objection at 3 (emphasis in original).) While it is true that the Court granted Plaintiff's motion for leave to file Mr. Villasenor's late

---

[4]     The cases that Plaintiffs cite have limited relevance here.  In two of those cases—Williams v. Epic Sec. Corp., 358 F. Supp. 3d 284 (S.D.N.Y. 2019) and Amaya v. Garden City Irrigation, Inc., No. 03-CV-2814-FB-RML, 2008 WL 2940529 (E.D.N.Y. July 28, 2008)—leave to amend was granted under the more liberal standard governing Federal Rule of Civil Procedure 15.  In Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193 (S.D.N.Y. 2014), the Court determined that Plaintiffs had established "good cause" to modify a scheduling order and file an untimely motion for leave to amend where Plaintiffs "reasonably awaited the close of the opt-in period to file one additional amended complaint" and "discovery ha[d] barely begun."  Id. at 198, 200.

opt-in form past the deadline on January 9, 2023 (docket entry no. 221), Plaintiffs received Mr. Villasenor's opt-in form on September 23, 2022 (Order at 5)—three weeks <u>before</u> Plaintiffs moved for leave to file their <u>Second</u> Amended Complaint (docket entry no. 192).  Plaintiffs have failed to explain why they could not have added the six additional plaintiffs to the Second Amended Complaint in October 2022.  <u>See</u> <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d Cir. 2009) (affirming denial of motion to amend where "the District Court concluded that plaintiffs had not been diligent in setting forth claims arising [before the prior amendment was filed] and had not shown good cause for their failure to include those claims in earlier versions of the complaint").

        <u>Third</u>, Plaintiffs emphasize that "plaintiffs wished to file their motion to amend as a cross motion and not as a motion," but Judge Gorenstein "directed Plaintiffs . . . to file their Motion to Amend separately and not as a cross motion to defendants' motion to decertify." (Objection at 3.)  Plaintiffs highlight that, even though "the Motion for Leave was brought after the deadline set forth by the Scheduling Order," they nonetheless adhered to "the Court's directives" regarding the deadline to file their Motion for Leave to Amend.  (<u>Id.</u>)  But, as Judge Gorenstein made clear, "[w]hen the Court issued a briefing schedule for the motion [for leave to amend], the Court did not refer to the deadline in the Scheduling Order; rather, it merely set a deadline by which plaintiffs could be heard as to any arguments [they] could make in support of [their] motion to amend."  (Order at 4.)  Because the briefing schedule did not disrupt the deadlines set in the relevant scheduling order, there is no indication that Judge Gorenstein's conclusion was clearly erroneous or contrary to law.

        <u>Finally</u>, Plaintiffs argue that they had established "good cause" because plaintiffs brought their Motion for Leave in response to Defendants' motion to decertify the FLSA

collective.  (Objection at 3-4.)  That is, Plaintiffs sought to "accurately present[] to the court at the end of defendant's decertification motion what claims plaintiffs as a whole could and could not bring on behalf themselves and the collective."  (Id. at 4.)  This argument may describe Plaintiffs' litigation strategy, but it does not demonstrate good cause or diligence.  In other words, Plaintiffs' desire to "tie[]" their motion to amend to Defendants' motion to decertify the FLSA class (Objection at 4) does not explain why "the deadlines [in the scheduling order] could not have been reasonably met despite [their] diligence" (One Step Up Ltd, 2022 WL 1446553, at *2).  For this reason, Judge Gorenstein's conclusion that Plaintiffs did not demonstrate diligence is neither clearly erroneous nor contrary to law.

### Rule 15

While Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires," the Court may nonetheless "refuse to grant leave to amend on grounds such as undue delay or prejudice, bad faith, or futility of amendment."  Davis v. Lenox Hill Hosp., No. 03-CV-3746-DLC, 2004 WL 1926086, at *3 (S.D.N.Y. Aug. 31, 2004) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

In his Order, Judge Gorenstein held, in the alternative, that "even if [the Court] were to consider the motion under the more liberal standard of Rule 15, [the Court] would still deny the motion to amend in light of plaintiffs' undue delay and the resulting need to re-open the discovery period to allow the depositions that plaintiffs inexplicably refused to provide earlier."  (Order at 7.)  He further noted that "courts in this circuit routinely hold that motions to amend are untimely when filed after the close of discovery and when the motion would require the re-opening of discovery."  (Id. at 7-8 (quoting Kiarie v. Dumbstruck, Inc., 473 F. Supp. 3d 350, 359 (S.D.N.Y. 2020)).)

Plaintiffs object to Judge Gorenstein's conclusion that "plaintiff[s'] motion to amend would fail under Rule 15, for the reason that the delay on plaintiff[s'] behalf would have the court have to reopen discovery for discovery to be done on the new plaintiffs." (Objection at 4.)  Plaintiffs argue that there is no reason to reopen discovery because Defendants did not depose the opt-in Plaintiffs before discovery closed—even though they were "known for a long time to all parties" and were even "presented . . . with Interrogatory Requests" before discovery closed.  (Id. at 4-5.)  Indeed, Plaintiffs insist that reopening discovery "would be prejudicial to plaintiffs" because Defendants "had their chance and failed to capitalize on it."  (Id. at 5 (emphasis added).)

This argument obfuscates how discovery proceeded in this case.  Critically, Defendants have proffered that "the proposed new plaintiffs had not been deposed during the discovery period due to plaintiffs' recalcitrance in producing them for depositions when they were opt-ins."  (Order at 6 (emphasis in original).)  Plaintiff's only response seems to be that "if [Defendants] had a problem with plaintiffs' counsel, they should have filed a motion to compel." (Objection at 5.)  But, even if Defendants could have pursued depositions of the known opt-in plaintiffs with greater "enthusiasm" (see id.), there is little doubt that the need to depose the proposed new plaintiffs would be greater if they were parties rather than mere opt-ins to the FLSA collective.  In any event, courts in this Circuit routinely find prejudice to warrant the denial of leave to amend under Rule 15 after discovery is closed.  See, e.g., Davis, 2004 WL 1926086, at *4 (denying motion for leave to amend filed five days after the close of discovery). In sum, the Court declines to disturb Judge Gorenstein's ruling as to Federal Rule of Civil Procedure 15 because the Court is not "left with the definite and firm conviction that a mistake has been committed."  Gualandi, 385 F.3d at 240 (citation omitted).

For the foregoing reason, Plaintiffs' Objection to Judge Gorenstein's Order is overruled. However, the Court notes that the denial is without prejudice to the six additional plaintiffs' ability to assert their claims separately.

Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the Second Amended Complaint and draws all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Defendants move to dismiss the Second Amended Complaint because Plaintiffs "fail to assert sufficient, non-conclusory facts to plausibly demonstrate the existence of employer-employee relationships between Defendants and Plaintiffs." (Docket entry no. 229 ("Def. Mem.") at 1.) "To state a claim under the FLSA or the NYLL, a plaintiff must establish that the defendant is an employer." Weng v. HungryPanda US, Inc., No. 19-CV-11882-KPF, 2022 WL 292799, at *4 (S.D.N.Y. Jan. 31, 2022). "A plaintiff who cannot make this threshold showing cannot maintain a claim under either statute." Id.

"The 'overarching concern' in determining whether an entity is an 'employer' is whether the entity 'possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case.'" Bravo v. Established Burger One, LLC,

No. 12-CV-9044-CM, 2013 WL 5549495, at *6 (S.D.N.Y. Oct. 8, 2013) (citation omitted).  In

examining this question, "courts in this District routinely apply the same tests to make the

employer determination under both" the FLSA and NYLL.  Hong v. Quest Int'l Limousine, Inc.,

No. 19-CV-4336-SN, 2021 WL 2188149, at *3 (S.D.N.Y. May 28, 2021).  In Carter v. Dutchess

Community College, 735 F.2d 8 (2d Cir. 1984), the Second Circuit established a four factor

"economic reality" test for determining whether an entity exercised "formal control" over an

employee: the relevant factors include "whether the alleged employer (1) had the power to hire

and fire the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment

records."  Id. at 12.[5]  "No one of the four factors standing alone is dispositive."  Herman v. RSR

Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999); see also Zheng v. Liberty Apparel Co. Inc.,

355 F.3d 61, 69 (2d Cir. 2003) (explaining that Herman does not mandate a "rigid four-part test,"

nor is "a positive finding on those four factors ... necessary to establish an employment

---

[5]     Courts in this Circuit have also considered six other factors to determine whether "an
entity has functional control over workers even in the absence of the formal control
measured by the Carter factors."  Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d
Cir. 2003).  These "functional control" factors include "(1) whether [the defendants']
premises and equipment were used for the plaintiffs' work; (2) whether the [defendants]
had a business that could or did shift as a unit from one putative joint employer to
another; (3) the extent to which plaintiffs performed a discrete line-job that was integral
to [the defendants'] process of production; (4) whether responsibility under the contracts
could pass from one subcontractor to another without material changes; (5) the degree to
which the [defendants] or their agents supervised plaintiffs' work; and (6) whether
plaintiffs worked exclusively or predominantly for the [defendants]."  Bao Guo Zhang v.
Shun Lee Palace Rest., Inc., No. 17-CV-00840-VSB, 2021 WL 634717, at *6 (S.D.N.Y.
Feb. 16, 2021) (quoting Zheng, 355 F.3d at 72).  However, the Court does not analyze
these factors because neither Plaintiffs nor Defendants made any argument or factual
proffer related to the functional control test.  See Hsieh Liang Yeh v. Han Dynasty, Inc.,
No. 18-CV-6018-PAE, 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019) (finding that
complaint lacking factual allegations relating to the functional control test "effectively
disable[d] the Court from applying" the factors).

relationship" (emphasis in original)).  Rather, "the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."  <u>Herman</u>, 172 F.3d at 139.  That said, a "conclusory" recitation of the <u>Carter</u> factors is insufficient to support an inference of an employer-employee relationship and thus, to state a claim.  <u>See, e.g.,</u> <u>Shi Ming Chen v. Hunan Manor Enter., Inc.</u>, No. 17-CV-802-GBD, 2018 WL 1166626, at *8 (S.D.N.Y. Feb. 15, 2018).

<u>Individual Defendants</u>

Defendants argue that Plaintiffs have not alleged sufficient facts to enable a reasonable fact finder to infer an employment relationship between any of the Individual Defendants and Plaintiffs.  (Def. Mem. at 15-21.)  In their Opposition, Plaintiffs argue that all four <u>Carter</u> factors indicate that each Individual Defendant had an employer-employee relationship with Plaintiffs.  (Docket entry no. 231 ("Pl. Mem.") at 7-10.)  The Court considers Plaintiffs' allegations relevant to the <u>Carter</u> factors as to each Individual Defendant in turn.

<u>Mr. Escobar</u>

Plaintiffs argue that all four <u>Carter</u> factors support a plausible inference that Mr. Escobar was their employer.  Plaintiffs provide some factual allegations to support the first <u>Carter</u> factor—that Mr. Escobar had the power to hire and fire Plaintiffs—and the third <u>Carter</u> factor—that Mr. Escobar determined the rate of payment.  That is, Plaintiffs allege (1) that Mr. Escobar actually hired and fired Mr. Perez and Mr. Arias (SAC ¶¶ 31, 46) and (2) that Mr. Escobar promised to pay Mr. Perez $25 per hour and Mr. Arias $17 per hour.  (<u>Id.</u> ¶¶ 39-40).  But satisfying the first and third <u>Carter</u> factors is not sufficient to establish an employment relationship.  <u>See, e.g.,</u> <u>Kaplan v. Wings of Hope Residence, Inc.</u>, No. 18-CV-2972-ADS-AKT, 2020 WL 616630, at *7 (E.D.N.Y. Feb. 7, 2020) (finding plaintiffs' allegations insufficient

where they alleged some hiring and firing authority but did not "raise any allegations pertaining to two of the four prongs of the <u>Carter</u> test").

Plaintiffs' remaining allegations are insufficient to support a finding of an employment relationship. As an initial matter, the Court declines to consider Plaintiffs' "boilerplate allegations" in the Second Amended Complaint that merely recite the <u>Carter</u> factors. <u>See</u> <u>Bao Guo Zhang v. Shun Lee Palace Rest., Inc.</u>, No. 17-CV-00840 (VSB), 2021 WL 634717, at *8 (S.D.N.Y. Feb. 16, 2021) (citation omitted). Setting aside the "boilerplate allegations," the Court is left with the allegations that Mr. Escobar "was present on a day-to-day basis" at the worksite in Ithaca, New York (SAC ¶ 26), "had project supervisors manage the work schedules of each employee" and "report the hours" (<u>id.</u> ¶¶ 28-29), and "intentionally failed to keep and/or retain records pertaining to the hours worked by Plaintiffs" (<u>id.</u> ¶ 47).[6] A reasonable factfinder could not infer from these allegations that Mr. Escobar supervised and controlled employee work schedules or conditions of employment or maintained employment records.[7] Instead, these factual allegations suggest that Mr. Escobar neither controlled Plaintiffs' work schedules—to the

---

[6]    In their Opposition, Plaintiffs allege that "[s]ince defendant Escobar was at the Ithaca location at all times the defendants completed that job he would discuss with plaintiffs and others when to come in and when to leave." (Pl. Mem. 9.) The Court cannot consider this argument because this factual allegation was not included in the Second Amended Complaint. <u>See, e.g.</u>, <u>K.D. ex rel. Duncan v. White Plains Sch. Dist.</u>, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

[7]    Indeed, Plaintiffs' conclusory allegation that Mr. Escobar "maintained employee records through corporate emails and at" Escobar Construction and Nations Construction (SAC ¶ 24) is contradicted by the allegation that he and "intentionally failed to keep and/or retain records pertaining to the hours worked by Plaintiffs" (<u>id.</u> ¶ 47).

extent that "project supervisors" managed their work schedules—nor maintained employment records.

Therefore, Plaintiffs have not plausibly alleged that Mr. Escobar employed them within the meaning of the FLSA and NYLL.

<u>Mr. Palacios</u>

Plaintiffs also argue that all four <u>Carter</u> factors support a plausible inference that Mr. Palacios was their employer.  But they only allege facts in support of the third <u>Carter</u> factor: namely, that Mr. Palacios determined the rate and method of their payment.  That is, Plaintiffs allege that Mr. Palacios "calculated the pay for the construction workers on Microsoft Excel and on paper" (<u>id.</u> ¶ 64), "handled the paychecks for JRS Services" (<u>id.</u> ¶ 65), "helped make the budgets as an . . . employee" of Escobar Construction (<u>id.</u> ¶ 76), "was authorized to sign the paychecks" of JRS Services (<u>id.</u> ¶ 91), and "would distribute pay checks sent" by Escobar Construction and Nations Construction (<u>id.</u> ¶ 97).

Plaintiffs' remaining factual allegations either contradict other allegations in the Second Amended Complaint or are too conclusory to state a claim.  That is, Plaintiffs allege that Mr. Palacios hired Mr. Perez for JRS Services (SAC ¶ 62), but they also allege that (1) Mr. Escobar hired Mr. Perez for Escobar Construction (<u>id.</u> at ¶ 31), and (2) Escobar Construction and JRS Services were part of a single enterprise that "share staff" (<u>id.</u> at ¶ 116).  Likewise, Plaintiffs allege both that Mr. Palacios "did not keep track of employee time" (<u>id.</u> ¶ 74) and that he "would jot down the work hours each day and mail such notes to the Escobar Construction . . . office, which in return would mail back employee checks" (<u>id.</u> ¶ 96; <u>see also</u> <u>id.</u> at ¶ 95 (alleging there "wasn't an organized methodology how [he] keep tracked of everything. Sometimes it was on

paper, and sometimes it was on email.")).  These two sets of contradictory allegations cannot

reasonably be taken as true.  Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011)

(observing that courts should not accept as true "factual assertions that are contradicted by the

complaint itself").  Plaintiffs' remaining factual allegations restate the Carter factors in a

conclusory manner.  (See SAC ¶ 55 (alleging that Mr. Palacios "(1) had the power to hire and

fire employees, (2) supervised and controlled employee work schedules or conditions of

employment, by having someone from each group noting the start time of the work day and

informing workers when they could leave, and (3) determined the rate and method of payment

based on experience and rate of project completion, and (4) maintained employee records"); see

also id. ¶¶ 63, 66.)  These boilerplate allegations are insufficient to establish an employment

relationship.  See, e.g., Yuan v. AA Forest, Inc., No. 20-CV-5484-AMD-MMH, 2022 WL

900614, at *5 (E.D.N.Y. March 28, 2022) ("The allegations in the complaint—that [Defendant]

had the power to hire, fire, set wages, set work conditions and maintain employment records—

are merely restatements of the four Carter factors, and are thus too conclusory to establish a

claim for relief.").

 Plaintiffs only make non-conclusory allegations relevant to one of the four Carter

factors as to Mr. Palacios.  Therefore, Plaintiffs have not plausibly pleaded that Mr. Palacios was

their employe within the meaning of the FLSA and NYLL.  See Yuan 2022 WL 900614, at *5

(finding that alleging "minimal facts relating to [two] Carter factors" was insufficient to plead an

employment relationship with defendant).

 Ms. Alvarez

 Plaintiffs failed to allege any facts indicating that Ms. Alvarez was their

employer.  Indeed, Plaintiffs do not allege any facts specific to their relationship with Ms.

Alvarez.  As to the first <u>Carter</u> factor, for example, Plaintiffs allege that Ms. Alvarez hired "Carol Baird, the VP of Escobar Construction, Inc. to serve as her supervisor at the Lafayette, Indiana work site."  (SAC ¶ 103).  This allegation is not relevant to the question of whether she had the power to hire or fire <u>Plaintiffs</u>.  <u>See</u> <u>Bao Guo Zhang</u>, 2021 WL 634717, at *8 (finding that "mere conclusory statements" that defendant hired a manager "only establishes the first <u>Carter</u> factor with regard to [defendant's] employment relationship with [that manager], rather than with Plaintiffs at issue").[8]  The remaining allegations related to Ms. Alvarez's status as Plaintiffs' employer—that Ms. Alvarez "had the authority to sign paychecks of Nations Construction" (<u>id.</u> ¶ 108), "was in charge of receiving the payments, paying the construction workers, and verifying that the job was done properly and [c]orrectly" (<u>id.</u> ¶ 109), "hired each of the construction workers on behalf of Nations Construction" (<u>id.</u> ¶ 111), and "controlled the employment conditions at the work sites" (<u>id.</u> ¶ 113)—are too conclusory to establish that she was Plaintiffs' employer.

Therefore, Plaintiffs have not plausibly raised a claim that Ms. Alvarez employed them within the meaning of the FLSA and NYLL.

<u>Corporate Defendants</u>

Defendants argue that Plaintiffs have not alleged sufficient facts for a reasonable factfinder to infer an employment relationship between any of the Corporate Defendants and Plaintiffs.  (Def. Mem. at 13-15.)  In their Opposition, Plaintiffs argue that "Corporate

---

[8]     Similarly, the allegation that Ms. Alvarez "would contact the supervisor of Escobar Construction, Inc. three to five times a month" (<u>SAC</u> ¶ 106) is not sufficiently specific to her relationship with Plaintiffs to support an inference of an employment relationship.

Defendants are all liable for [Plaintiffs'] claims under the Single Integrated Enterprise theory."
(Pl. Mem. at 10.)

It is true that, under the FLSA, multiple corporate entities can be liable as a "joint employer" under a single enterprise theory if they "operate as a single enterprise with significant interrelation of operations."  Apolinar v. R.J. 49 Rest., LLC, No.15-CV-8655-KBF, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016).  To determine whether multiple corporate entities constitute a single enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Id. (internal quotation omitted).  Plaintiffs make a number of factual allegations related to these four factors.  (See Pl. Mem. 11-12.)

Plaintiffs' factual allegations are, however, insufficient to state a claim because "[a]llegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees." Lopez v. Acme Am. Envt'l Co., Inc., No. 12-CV-511-WHP, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012).  Here, Plaintiffs' only argument that Corporate Defendants were Plaintiffs' employers for the purposes of the FLSA and NYLL is that the "[individual] defendants all controlled corporate defendants."  (Pl. Mem. at 12.)  But, as explained above, Plaintiffs failed to adequately plead facts to plausibly allege that the Individual Defendants were their employers. Nor have Plaintiffs pleaded facts sufficient to support an inference that any of the three corporate defendants was their employer within the meaning of the statutes under which they assert their claims.  Therefore, Plaintiffs have not plausibly alleged that the Corporate Defendants employed them within the meaning of the FLSA and NYLL.

In sum, Plaintiffs failed to meet the threshold requirement to state their claims under the FLSA and NYLL—that they were employed by either the Individual or Corporate Defendants.[9]  For that reason, Defendants' Motion to Dismiss is granted.

<u>CONCLUSION</u>

For the foregoing reasons, the Objection is overruled and the Motion to Dismiss is granted.  This Memorandum Order and Opinion resolves docket entries no. 227 and 267.  The Clerk of Court is respectfully directed to enter judgment dismissing the Second Amended Complaint and close the case.

SO ORDERED.

Dated: New York, New York
           August 22, 2023

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
Chief United States District Judge

---

[9]     Because this threshold issue is dispositive, the Court need not address the other arguments Defendants presented in their Motion to Dismiss.