UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARCO ANTONIO PEREZ PEREZ, and
JOSE EDUARDO ARIAS,

              Plaintiffs,

  -v-                                                    No. 20-CV-08010-LTS-GWG

ESCOBAR CONSTRUCTION, INC., et al.,

              Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiffs Marco Antonio Perez Perez ("Perez") and Jose Eduardo Sanchez Arias ("Sanchez Arias," and together, "Plaintiffs") bring this action alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. section 201 <u>et</u> <u>seq.</u>, and New York Labor Law sections 650 <u>et</u> <u>seq.</u> and 190 <u>et</u> <u>seq.</u> ("NYLL") against remaining corporate defendants JRS Services, LLC ("JRS Services") and Nations Construction, Inc. ("Nations" and, together, the "Corporate Defendants"), and remaining individual defendants Elias Osmin Alvarez Palacios ("Palacios") and Jenny Carolina Alvarez ("Alvarez" and, together, the "Individual Defendants"). Plaintiffs' claims against named Defendant Escobar Construction, Inc., Jhony Escobar, Natalie Palacios, and Luis Enrique Monzon have been terminated voluntarily. (<u>See</u> docket entry nos. 291, 169.)

        This case is before the Court on Defendants' Motion for Summary Judgment. (Docket entry no. 299 ("Motion for Summary Judgment").) The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367(a).

The Court has considered the submissions of the parties in connection with the instant motion carefully.  For the following reasons, Defendants' Motion for Summary Judgment is granted in its entirety.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case.  The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and from the evidentiary record presented to the Court in connection with the instant motion, and they are undisputed unless otherwise indicated.

Plaintiffs performed construction work for Defendants at various times between 2017 and 2019.  (Docket entry no. 307 ("Pl. 56.1 St.") ¶ 57, 62.)[1]  Specifically, Plaintiffs worked as painters on projects across cities in several states, including in Binghamton, New York (from March through June 2017 and September through October 2017), Elmira, New York (from July through August 2017), Kansas City, Kansas (from August through September 2017), Columbus, Ohio (October 2017), Ithaca, New York (from November 2017 through August 2018), and Lafayette and Huntington, Indiana (from November 2018 through November 2019).  (Id. ¶ 62; docket entry no. 308-1 ("Sanchez Arias Aff.") ¶ 7; docket entry no. 299-9 ("Perez Dep.") at 16:9-16:17.)  Mr. Perez also worked on a project in New Albany, Ohio for two or three weeks in September 2018.  (Sanchez Arias Aff. ¶ 7.)

There are four Defendants remaining in this case: two Corporate Defendants, JRS Services and Nations, and two Individual Defendants, Elias Palacios and Jenny Alvarez.  The Individual Defendants owned the Corporate Defendants.  Palacios was the sole owner and

---

[1] Citations to the parties' Local Rule 56.1 Statements of Undisputed Material Facts incorporate by reference citations to the underlying evidentiary record contained therein.

member of JRS Services and was the only person with authority to sign checks on JRS Services' behalf (Pl. 56.1 St. ¶¶ 29, 32), and Alvarez was the sole owner of Nations during the relevant time period (id. ¶¶ 68, 65). JRS Services was dissolved on February 5, 2018 (id. ¶ 28), and Nations was not incorporated until November 26, 2018 (id. ¶ 64).

        Plaintiffs claim that Defendants failed to pay them promised wages and overtime pay in violation of federal and state law. Most of Plaintiffs' claims and evidence center on work they performed for Jhony Escobar and his company, Escobar Construction, Inc. ("Escobar Construction"). Plaintiffs' claims against both Jhony Escobar and Escobar Construction were voluntarily dismissed with prejudice pursuant to a so-ordered stipulation on September 3, 2024—more than a month before the instant motion practice began. (Docket entry no. 291.)[2] Plaintiffs' claims against Individual Defendants Palacios and Alvarez are based principally on the facts that they were Jhony Escobar's son and niece, respectively, and were Plaintiffs' day-to-day supervisors on several construction projects. (See, e.g., Sanchez Arias Aff. ¶ 28.) Plaintiffs claim that Palacios was involved with the construction projects in Binghamton, Kansas City, and New Albany, and that Alvarez was involved with the projects in Indiana. (Id. ¶¶ 20-25.) Plaintiffs also claim that there was no corporate separation between Escobar Construction and the Corporate Defendants. (Docket entry no. 309 ("Pls. Mem.") at 10.) They claim that, although they "worked for Escobar Construction, Inc.," they often "receive[d] paychecks from" JRS Services and Nations. (Sanchez Arias Aff. ¶ 32.) According to Plaintiffs, those paychecks

---

[2] Plaintiffs' claims against two other former parties have also been dismissed voluntarily. Plaintiffs' claims against Natalie Palacios were terminated by so-ordered stipulation on October 6, 2022 (docket entry no. 169), and Plaintiffs excluded Luis Enrique Monzon from the Defendants named in their November 2022 Second Amended Complaint (docket entry no. 213 ("Second Amended Complaint" or "SAC")).

reflected shortfalls based on the hourly wages promised to Plaintiffs and did not include overtime wage payments.  (Id. ¶¶ 45-46; Perez Dep. at 63:22-64:10; see generally SAC ¶¶ 187-227.)

Plaintiffs and Defendants agree on very little regarding the structure of Plaintiffs' compensation and the nature of the relationships between Plaintiffs and Defendants.  For example, they disagree about how Plaintiffs received their paychecks (Pl. 56.1 St. ¶ 7-8), the extent to which Defendants controlled and tracked Plaintiffs' schedule and working hours (id. ¶ 14-15, 21), and whether Plaintiffs were paid by the hour or per square foot painted (id. ¶ 9).  Plaintiffs also claim they were employees, while Defendants argue they were independent subcontractors.  (Id.)

Plaintiffs filed this case in the United States District Court for the Northern District of New York on December 29, 2019 (docket entry no. 1 ("Initial Complaint")) and amended their Complaint by right on August 3, 2020 (docket entry no. 28 ("First Amended Complaint")).  Plaintiffs' Initial Complaint named as defendants only Nations and several now-dismissed parties, while their First Amended Complaint raised claims against all Defendants.  Both complaints raised FLSA and NYLL claims related only to work Plaintiffs performed at a job site in Ithaca, New York (the "Ithaca project").  The case was transferred to this District and assigned to the undersigned in September 2020 (see docket entry dated September 28, 2020 ("Case Opening Initial Assignment Notice")).  Plaintiffs moved to amend their complaint a second time on October 10, 2022 (docket entry no. 180) and filed their Second Amended Complaint with the Court's leave on November 29, 2022.  While maintaining their claims based on the Ithaca project, Plaintiffs' Second Amended Complaint also raised new claims based on Plaintiffs' work on all of the other construction projects that took place between 2017 and 2019.

Currently before the Court is Defendant's Motion for Summary Judgment, which argues that all of the remaining claims should be dismissed in their entirety.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining whether there is a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (citation omitted).

Plaintiffs here raise two FLSA claims: failure to pay minimum wage/unpaid wages and failure to pay overtime. (SAC ¶¶ 187-90, 196-203.) "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citations omitted). To make out a prima facie case for both claims, Plaintiffs must establish, inter alia, "that the defendant failed to pay [them] the minimum wage or overtime as required by the FLSA." Vecchio v. Quest Diagnostics Inc., No. 16-CV-5165-ER, 2020 WL 5604080, at *7 (S.D.N.Y. Sept. 18, 2020).

In their moving papers, Defendants raise three threshold issues in addition to their arguments on the merits: challenges based on subject matter jurisdiction, personal jurisdiction, and statute of limitations as to the FLSA claims.  Because these issues are potentially dispositive, the Court will address them first.

Subject Matter Jurisdiction

Subject matter jurisdiction, "simply put, is the Court's power to adjudicate a case."  Grajales v. Eli Lilly & Co., No. 23-CV-6972-JPO, 2023 WL 6259654, at *2 (S.D.N.Y. Sept. 26, 2023).  In cases where plaintiffs assert federal statutory claims, the Court has original jurisdiction of those federal claims pursuant to 28 U.S.C. section 1331, which provides district courts with "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  FLSA claims arise under the laws of the United States because the FLSA is a federal statute, so 28 U.S.C. section 1331 provides the Court subject matter jurisdiction of Plaintiffs' FLSA claims.

Defendants argue that the Court lacks subject matter jurisdiction of this action because Defendants are not covered by the FLSA under an enterprise liability theory.  This position represents a fundamental misunderstanding of the relationship between subject matter jurisdiction and substantive liability.  While it is true, as Defendants argue, that covered entity status is a "required element for a FLSA claim" (docket entry no. 299-29 ("Defs. Mem.") at 16), Defendants are mistaken that the Court's jurisdiction turns on the merits question of whether Defendants are covered entities.  Defendant's position derives from a misreading of its cited caselaw, which stated unequivocally that the issue of enterprise liability "goes to the merits, not subject matter jurisdiction."  Aquino v. El Gran Valle II Corp., No. 17-CV-2465-KBF, 2017 WL 5195238, at *2 n.3 (S.D.N.Y. Nov. 9, 2017).  Indeed, the Court's federal question subject matter

jurisdiction is a threshold question based on the nature of the claims themselves that precedes, and therefore cannot depend on, the resolution of their merits.  Defendants' motion is denied insofar as it seeks dismissal for lack of subject matter jurisdiction.

Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over various parties. Defendants have, however, waived personal jurisdiction defenses.

Under the Federal Rules of Civil Procedure, if a party fails to raise an objection to personal jurisdiction in its first motion or responsive pleading, the objection is waived.  Fed. R. Civ. P. 12(b)(2), (h); see also Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 n.1 (2d Cir. 1992).  Here, Defendants' first responsive pleading was their answer to Plaintiffs' First Amended Complaint.  (Docket entry no. 63 ("First Answer").)  That First Answer mentions jurisdiction only once, arguing as a defense that "[t]he United States Court [sic] for the Southern District of New York lacks jurisdiction over Plaintiff's claims."  (Id. at 2.)  This generalized statement, which nowhere mentions personal jurisdiction, does not preserve Defendants' defense under Rule 12(b)(2), particularly because it challenges the Court's jurisdiction of claims (an issue of subject matter jurisdiction) rather than its jurisdiction of parties.  Indeed, Defendants previously acknowledged their waiver when briefing their motion to dismiss.  (Docket entry no. 234 at 2 (requesting that the Court "excuse their untimeliness in the interest of judicial economy" and find that Defendants did not waive personal jurisdiction).)

In reply, Defendants argue that they did not waive personal jurisdiction because they explicitly raised a personal jurisdiction defense in their motion to dismiss Plaintiffs' operative complaint, the Second Amended Complaint.  (Docket entry no. 311 at 1.)  This argument is squarely foreclosed by longstanding Second Circuit precedent holding that "the Rule

12 defense[] of lack of personal jurisdiction, . . . if waived by defendant's failure to raise [that] objection[] in response to the original complaint, may not be resurrected merely because a plaintiff has amended the complaint." Gilmore v. Shearson/Am. Exp. Inc., 811 F.2d 108, 112 (2d Cir. 1987); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (holding that failure to raise personal jurisdiction in the first responsive pleading results in "irrevocabl[e]" waiver). Defendants' motion is denied to the extent it seeks dismissal for lack of personal jurisdiction.

Statute of Limitations

Defendants argue that most of Plaintiff's FLSA claims are untimely and further argue that summary judgment must be granted as to the few timely claims for failure to state claims upon which relief may be granted. The Court will first address the timeliness issues.

Under the FLSA, "a new cause of action accrues with each payday following an allegedly unlawful pay period." Ogleton v. City of New York, No. 21-CV-6889-PGG-OTW, 2024 WL 5103330, at *6 (S.D.N.Y. Dec. 13, 2024) (internal quotations omitted). Each unlawful payment thus creates an independent cause of action with its own statute of limitations, and that statute of limitations begins to run "on the regular payday immediately following the work period for which services were rendered and not properly compensated." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005); see also Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).

Here, the timeliness of Plaintiffs' FLSA claims varies claim by claim and defendant by defendant, as Plaintiffs raised those claims and joined those parties at different points throughout the litigation. Plaintiffs' Initial Complaint, filed on December 29, 2019, named Nations and several other now-dismissed entities and individuals as Defendants.

Plaintiffs' First Amended Complaint, filed on August 3, 2020, added JRS Services, Palacios, and Alvarez as Defendants. Both complaints raised FLSA claims based only on work Plaintiffs performed on the Ithaca project. In their Second Amended Complaint, Plaintiffs added new allegations of FLSA violations based on construction they performed at six other worksites between 2017 and 2019, with the latest project ending in February 2019.[3]

### Willfulness

The statute of limitations for an FLSA claim is ordinarily two years, unless the violation was "willful," in which case the limitations period is extended to three years. 29 U.S.C. § 255(a) (Westlaw through P.L. 118-158). "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." Kuebel, 643 F.3d at 366 (citation omitted). "In a suit for unpaid overtime wages, willfulness means that the employer knew that it had failed to properly pay its employees or was reckless with regard to that failure." Perry v. City of New York, 78 F.4th 502, 520 (2d Cir. 2023); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (reasoning that "willful" conduct, as used in the FLSA, is more than just "negligent" conduct). "Reckless disregard can be shown through action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Perry, 78 F.4th at 520 (citations and internal quotation marks omitted). Willfulness is an "independent element" for claims of "willful

---

[3] This included claims of underpayment based on work Plaintiffs performed before the Ithaca project at Binghamton, New York; Elmira, New York; Kansas City, Kansas; and Columbus, Ohio. It also included claims based on work Plaintiffs performed after the Ithaca project in New Albany, Ohio (for Mr. Perez) and Lafayette and Huntington, Indiana. (See generally SAC.)

violation of the FLSA," so the burden of proof as to the question of willfulness falls on the FLSA plaintiff, not the defendant. Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 322 (2d Cir. 2021).

Here, Plaintiffs have failed entirely to carry their burden. As a preliminary matter, Plaintiffs' arguments on willfulness lack a single citation to the record. This fact itself is dispositive, as "unsupported argument is not evidence, and cannot defeat summary judgment." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 980 F. Supp. 2d 425, 459 (S.D.N.Y. 2013); see also Fed. R. Civ. P. 56(c)(1)(A) (explaining that parties must support their assertions by "citing to particular parts of materials in the record"). Furthermore, Plaintiffs' unsupported arguments fail to persuade the Court that Defendants willfully violated the FLSA.

Plaintiffs assert that "Defendant Jhony Escobar induced Plaintiffs to work in Indiana under the guise that they would be paid in full for their unpaid wages." (Pls. Mem. at 13). Even if Escobar had willfully violated the FLSA, the parties stipulated to the voluntary dismissal with prejudice of Plaintiffs' claims against Escobar more than a month before the instant motion practice. (Docket entry no. 291.) Plaintiffs therefore must proffer sufficient evidence connecting Escobar's knowing or reckless violation of the FLSA with Defendants.

Plaintiffs argue that Escobar is connected to Defendants through an integrated or single enterprise linking the business activities of Escobar Construction, JRS Services, and Nations. (Pl. Mem. at 9-10.) When determining whether multiple defendants constitute a single employer, courts consider four factors: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." Mangahas v. Eight Oranges Inc., 754 F. Supp. 3d 468, 486 (S.D.N.Y. 2024) (citation omitted).

Here, no reasonable factfinder could conclude on the basis of the record before the Court that Nations was an integrated enterprise with either Escobar Construction or JRS

Services. Defendants presented uncontested evidence that Escobar Construction ceased its operations after the Ithaca project ended in August 2018 (docket entry no. 299-11 at 11:3-11:21; see also Sanchez Arias Aff. ¶ 7) and that JRS Services was dissolved on February 5, 2018 (Pl. 56.1 St. ¶ 28). Plaintiffs admit that Nations was not incorporated until November 2018, months after Escobar Construction and JRS Services ceased all operations. (Pl. 56.1. St. ¶ 64; see also id. ¶ 39 (admitting that "Defendants JRS Services and Palacios never worked for Defendant Nations").) There can be no single enterprise among entities that never operated at the same time.

        A reasonable factfinder similarly could not find that Escobar Construction and JRS Services constituted an integrated enterprise. Plaintiff raises various arguments in support of an integrated enterprise theory, but nearly all of their arguments rely exclusively on defective assertions from the Sanchez Arias affidavit. Assertions in an affidavit used to oppose a motion for summary judgment "must be made on personal knowledge," Fed. R. Civ. P. 56(c)(B)(4), and cannot be conclusory, Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). In their Opposition, Plaintiffs reference numerous assertions from the affidavit that are either conclusory or fail to establish Arias Sanchez's personal knowledge.[4] Plaintiffs also reference several purported quotes from their Rule 56.1 Statement that do not actually exist in that Statement. (E.g., Pl. Mem. at 10 (arguing that Defendants "'advertise . . . as an enterprise'" and that

---

<sup></sup>
4    For example, Plaintiffs cite to Sanchez Arias's affidavit to argue that (1) Escobar Construction and the Corporate Defendants "share staff" like Carol Baird and Mr. Ganbino (Pl. Mem. at 9); (2) that Nations diverted funds to family members (id. at 10, 15); and (3) that Escobar "directed the behind-the-scenes of all three companies" (id. at 10). But there is no indication in the affidavit that Sanchez Arias had personal knowledge of any of these assertions.

Plaintiffs and their coworkers understood they were "working for the 'Escobar family'").) None of this evidence is entitled to weight on this record.

The only argument Plaintiffs make that the Court may properly consider is that the Defendants "pa[id] Plaintiffs for work performed on behalf of Escobar Construction using checks issued by Nations Construction or JRS Services." (Id. at 9.) While this fact may show some degree of interrelated operations, it is not enough to create a triable issue of fact as to whether Escobar Construction and JRS Services constituted an integrated enterprise. See Div. 1181 Amalgamated Transit Union – N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., No. 13-CV-9112-PKC, 2014 WL 4370724, at *7 (S.D.N.Y. Aug. 27, 2014) (finding no integrated enterprise when only one of the four factors was met). This is particularly so because Plaintiff admits that another factor—common ownership—was not met. (Pl. 56.1 St. ¶ 29 (admitting that Palacios is the "sole owner and member of Defendant JRS Services"); id. ¶ 32 (admitting that "[o]nly Defendant Palacios had authority to sign checks and enter into contracts on behalf of Defendant JRS Services").)

Because Plaintiffs failed to establish a triable issue of fact as to the applicability of the integrated enterprise theory, they must establish that Defendants themselves willfully violated the FLSA. See Perry, 78 F.4th at 520. Plaintiffs have failed to make this showing. Plaintiffs claim that Palacios and Alvarez, acting through JRS Services and Nations, "each provided checks that represented far less than full payments to Plaintiff for their work in Lafayette Indiana." (Pls. Mem. at 13.) Even if true, this argument says nothing about the culpable mental state—knowledge or recklessness—required to establish willful FLSA violations. Perry, 78 F.4th at 520. Plaintiffs' final argument that Nations "diverted funds to . . . Jhony Escobar's wife," even if it were relevant, is based on assertions from the Sanchez Arias

affidavit that lack any indication of personal knowledge. (Pls. Mem. at 13); see also Fed. R. Civ. P. 56(c)(B)(4). That argument is therefore entitled to no weight.

In sum, the record Plaintiffs have presented fails to frame disputed issues of material fact as to Defendants' allegedly willful violations of the FLSA in connection with Plaintiffs' employment. Absent this showing, the ordinary two-year statutory period applies to all of Plaintiffs' FLSA claims. 29 U.S.C. § 255(a) (Westlaw through P.L. 118-158). Having made this determination, the Court now considers whether Plaintiffs' individual FLSA claims are time barred.

Claims First Raised in the Second Amended Complaint

Aside from the Ithaca project, Plaintiffs raised FLSA claims based on every construction project for the first time in their Second Amended Complaint. They sought leave to add these claims by filing a motion to amend on October 10, 2022. (Docket entry no. 180.) October 10, 2022 therefore constitutes the "date the action was commenced for statute of limitations purposes," as it was the first time that Plaintiffs "include[d] a proposed amended complaint or otherwise put[] the defendants on notice of the claims sought to be asserted." Bensinger v. Denbury Res. Inc., 31 F. Supp. 3d 503, 508-09 (E.D.N.Y. 2014).

Based on this date of commencement, every FLSA claim Plaintiffs raised for the first time in their Second Amended Complaint is time barred. Plaintiff's own evidence shows that all of their work for Defendants took place between 2017 and 2019, with the final project in Indiana ending in February 2019. (Sanchez Arias Aff. ¶ 7.) The cause of action for the final allegedly unlawful payment thus accrued in February 2019, and its statute of limitations expired in February 2021—well over a year before the October 10, 2022 date of commencement for these FLSA claims. See Bensinger, 31 F. Supp. 3d at 508-09; Lee, 236 F.R.D. at 199. Plaintiffs'

FLSA claims for work performed on the Binghamton, Elmira, Kansas City, Columbus, New Albany, Lafayette, and Huntington projects are thus time barred, and Defendants' Motion for Summary Judgment is granted as to those claims.

### Claims Raised in the Initial and First Amended Complaints

Claims based on the Ithaca project are situated differently than those based on other projects. Plaintiffs' Initial Complaint, filed on December 29, 2019, brought Ithaca-related FLSA claims against Nations, and their First Amended Complaint, filed on August 3, 2020, brought Ithaca-related FLSA claims against Defendants JBS Services, Palacios, and Alvarez. Based on the time period when Plaintiffs worked on the Ithaca project, between November 2017 and August 2018 (Sanchez Arias Aff. ¶ 7), some FLSA causes of action arising from the Ithaca project could be timely, while others are clearly time barred.

As explained above, a new FLSA cause of action accrues on "each payday following an allegedly unlawful pay period," Ogleton, 2024 WL 5103330, at *6, and the statute of limitations for each cause of action begins running from that payday, Lee, 236 F.R.D. at 199. Here, the statute of limitations is two years long. For Plaintiffs' Ithaca-related FLSA claims, any causes of action based on allegedly unlawful paydays that occurred before December 29, 2017 are time barred as to Nations, and any that occurred before August 3, 2018 are time barred as to Defendants JRS Services, Palacios, and Alvarez. Defendants' Motion for Summary Judgment is granted as to those untimely causes of action arising from the Ithaca project site. Plaintiffs' Ithaca-related FLSA causes of action that accrued after December 29, 2017 and August 3, 2018 are timely as to Nations and the other Defendants, respectively.

The Timely Ithaca-Related Claims Fail on the Merits

While Defendants acknowledge that some of the Ithaca-related claims could be timely, they nonetheless argue that summary judgment is warranted because none of the Defendants who remain in the case were involved with the Ithaca project site. (Defs. Mem. at 19.) Plaintiffs concede this point as to all four Defendants. After reviewing the evidence, the Court finds no indication that any Defendants in this case were involved with the Ithaca project, and Defendants are therefore entitled to summary judgment dismissing the claims as a matter of law.

As explained above, Plaintiffs have failed to proffer evidence upon which a reasonable factfinder could conclude that Nations and JRS Services bear responsibility for each other's liabilities or those of Escobar Construction based on the integrated enterprise theory. This means that Defendants are liable only if they independently violated the FLSA with respect to the timely Ithaca claims. Plaintiffs have failed to make this showing as a matter of law as to Nations, which Plaintiffs admit was not incorporated until several months after the Ithaca project concluded in August 2018. (Pl. 56.1 St. ¶ 64; see also Sanchez Arias Aff. ¶ 7.) They also have failed to make this showing as to their timely claims against JRS Services based on paydays in August 2018. Plaintiffs admit that JRS Services was dissolved on February 5, 2018, well before those timely claims arose. (Pl. 56.1 St. ¶ 28.)

Plaintiffs similarly presented no evidence that creates genuine disputes of material fact as to their timely Ithaca-related FLSA claims against the Individual Defendants. Plaintiffs' Opposition concedes that Palacios and Alvarez did not play a role in the Ithaca project, and the Court's own review of the record reveals no evidence of such a role. While Plaintiffs present evidence that Palacios and Alvarez were involved with other projects, they provide no similar

evidence as to the Ithaca project. For example, Plaintiffs claim that Defendants Palacio and Alvarez supervised them at the Binghamton, New York and Lafayette, Indiana sites, respectively (see, e.g., Sanchez Arias Aff. ¶ 28), but they admit that individuals other than Palacios and Alvarez supervised them at the Ithaca site. (Pl. 56.1 St. ¶ 134; Perez Dep. at 74:9-74:19.) In fact, Perez testified that Palacios did not owe him any money at all (Perez Dep. at 39:17-39:19.), and he testified that he did not even know who Alvarez was and had no personal reason to sue her (id. at 55:6-56:6). Mr. Sanchez Arias's affidavit describes Palacios' work in relation to nearly every project yet is silent as to Ithaca (Sanchez Arias Aff. ¶¶ 20-28), and his deposition testimony does not mention Alvarez even once.

Because Plaintiffs have presented no evidence that any of the remaining Defendants played a role in the Ithaca project that gave rise to Plaintiffs' only timely claims, Defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment is granted.

Supplemental Jurisdiction

Because the Court grants the Defendants' Motion for Summary Judgment dismissing all of Plaintiff's federal claims, the Court has the discretion to decide whether to exercise supplemental jurisdiction of Plaintiffs' remaining state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); 28 U.S.C. § 1367(c) (Westlaw through P.L. 119-18) (providing that court may decline to exercise supplemental jurisdiction where, inter alia, the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction" and where "the district court has dismissed all claims over which is has original jurisdiction"). The Court declines to exercise supplemental jurisdiction of Plaintiffs'

NYLL claims, which now constitute the only remaining claims, and dismisses them without prejudice to litigation in a forum of competent jurisdiction.  See 28 U.S.C. § 1367(c).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in its entirety.  The Clerk of Court is respectfully directed to enter judgment dismissing Plaintiffs' federal law claims and declining to exercise jurisdiction of Plaintiffs' state claim, and then to close the case.  This Memorandum Opinion and Order resolves docket entry number 299.

SO ORDERED.

Dated: New York, New York
September 25, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge